# WIGDOR LLP
ATTORNEYS AND COUNSELORS AT LAW

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ FEB 2 3 2018 ★

BROOKLYN OFFICE

45 FIFTH AVENUE
NEW YORK, NY 10003
TEL 212.257.6800
FAX 212.257.6845
WWW.WIGDORLAW.COM

**Michael J. Willemin**
mwillemin@wigdorlaw.com

January 26, 2018

**VIA ECF**

The Honorable Frederic Block
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:     Suchowieski, et al. v. Verboten Corporation, et al. Case No. 16-cv-01295 (FB)(ST)

Dear Judge Block:

We represent Plaintiffs and submit this letter jointly with Defendants (Plaintiffs and Defendants, together, the "Parties") to respectfully request approval of the settlement of Plaintiffs' claims under the Fair Labor Standards Act ("FLSA"). See Ex. 1 (the "Agreement"). The Agreement is the result of an agreement in principle reached during a June 5, 2017 settlement conference with Magistrate Judge Steven L. Tiscione. Following the June 5, 2017 settlement conference, the Parties formalized the Agreement. One of the parties to the agreement, Brooklyn Events, LLC d/b/a Verboten ("BE"), was in Chapter 7 bankruptcy at the time the Agreement was executed. As a result, certain of the distributions to Plaintiffs proposed under the Agreement required approval by the Bankruptcy Court for the Eastern District of New York. On January 19, 2018, the Bankruptcy Court approved the relevant distributions. See Ex. 2. We have at all times kept Judge Tiscione fully informed of the aforementioned. See Dkt. Nos. 29 and 30.

Now that the Bankruptcy Court has approved the Agreement, we seek Your Honor's approval. The Parties and their counsel have determined that the interests of all those concerned are best served by compromise, settlement and dismissal of these claims with prejudice, in exchange for consideration as set forth in the Agreement. The Parties have concluded that the Agreement – which was negotiated at arm's length during a settlement conference with Judge Tiscione – is fair, reasonable, adequate and in the Parties' mutual best interests.

Pursuant to the Agreement, Defendants and BE will pay Plaintiffs $110,000, inclusive of attorneys' fees. This is a substantial payment, particularly given that the individual Defendants assert that they are unable to pay any more than $20,000, and the very last of BE's assets are being paid to Plaintiffs under the Agreement (and BE only has the ability to pay those monies because its bankruptcy counsel agreed to contribute $90,000 of its fees to ensure resolution of this case). Plaintiffs' total alleged out-of-pocket losses were only approximately $141,871, which means that

# WIGDOR LLP

ATTORNEYS AND COUNSELORS AT LAW

The Honorable Frederic Block
January 26, 2018
Page 2

the settlement represents the recovery of nearly 80% of Plaintiffs' alleged out-of-pocket losses. Even after attorneys' fees and costs are deducted from the total settlement, Plaintiffs are receiving approximately 50% of their alleged out-of-pocket losses. This is a very good and fair resolution because, in addition to Defendants' inability to pay more, Defendants deny the allegations and there is a risk that Plaintiffs would not even succeed on liability, never mind collect substantial damages. Additionally, and critically, this settlement was the result of arm's length negotiations before Judge Tiscione.

Accordingly, the Agreement is fair, reasonable, adequate, in the Parties' mutual best interests and meets all of the applicable standards for approval. See, e.g., Gomez v. Bogopa Madison LLC, No. 17 Civ. 5006 (RA), 2017 WL 6594226, at *2 (S.D.N.Y. Dec. 21, 2017); Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); Johnson v. Brennan, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011).[1]

Finally, under the Agreement, Plaintiffs' counsel will be paid $41,257.24 for attorneys' fees and costs. The attorneys' fees ($38,500) are calculated on a 35% contingency basis pursuant to Plaintiffs' retainer agreements with our Firm. By point of comparison, our loadstar figure is greater than $100,000, well above the amount of fees we are receiving pursuant to the Agreement. Plaintiffs' counsel will gladly provide redacted (for privilege) contemporaneous billing records as may be requested by the Court.

Lastly, Plaintiffs' counsel is being reimbursed in the amount of $2,757.24 for litigation expenses related to Plaintiffs' claims. Plaintiffs' counsel would gladly provide documentation of these expenses as may be requested by the Court. Plaintiffs' counsel's expenses were necessary and directly related to the representation and ultimate result.

Respectfully submitted,

Michael J. Willemin

Enc.

cc:     Counsel for Defendants (via ECF)

---

[1]     The Agreement contains a general release, rather than the more limited release typically contained in FLSA settlements. The reason for this is that the Agreement resolves all of the claims in this lawsuit, including claims for sexual harassment and pregnancy discrimination. The general release is in consideration of the Defendants' obligations to Plaintiffs in resolving the non-FLSA claims.

# Exhibit 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Settlement Agreement**") is made as of November 28, 2017 by and among Steven Suchowieski, Rebecca-Emma Kaplan, Darrin Morda, Thomas Beaulieu, James Barnes, Oliver Correa, Leslie Cuc, Ari Fraser, Vanessa Lowe, Rosa Milazzo, Erika Mugglin, Catherine Papamanousakis,  Ryan Pilger, Sarah Pribis, Miles Ewell, Luis Cardozo, Ilana Brin, Rachel Depante, George Faya, Christina Ingram, and Brittany Perkins (each, a "**Plaintiff**" and collectively the "**Plaintiffs**"), and Plaintiffs' attorneys, Wigdor, LLP on the one hand, and on the other hand, Tarter Krinsky & Drogin LLC ("**TKD**"); Alan Nisselson ("**Trustee**") as Trustee for the chapter 7 bankruptcy estate of Brooklyn Events LLC d/b/a Verboten ("**Brooklyn Events**"); Verboten Corporation, and their affiliates, divisions, subsidiaries, parents, and present and former officers, directors, employees (collectively, "**Verboten**"); Jen Schiffer ("**Schiffer**"), John Perez and Dylan Schwartz, and their heirs, successors, agents or assigns (collectively, Schiffer, John Perez and Dylan Schwartz are the "**Individual Defendants**") (Brooklyn Events, Verboten and the Individual Defendants together are "**Defendants**"; and each of the Plaintiffs, Wigdor LLP, TDK, Trustee, and the Defendants is a "**Party**", and collectively, they are the "**Parties**").

### RECITALS

A.     On March 15, 2016, Plaintiffs filed a complaint against Defendants in the United States District Court for the Eastern District of New York (the "**District Court**") titled *Suchowieski, et al. v. Brooklyn Events LLC d/b/a "Verboten," et al.*, Case No. 16-cv-01295 (FB)(ST), which complaint was amended on June 8, 2016 (the "**Lawsuit**").

B.     Plaintiffs' amended complaint alleged their entitlement to damages resulting from Defendants' alleged violations of the Fair Labor Standards Act, the New York Labor Law

{11396505:4}

("**NYLL**"), the New York Code, Rules and Regulations, the New York State Human Rights

Law, and the New York City Human Rights Law, as well as New York State common law and

tort claims.

        C.      Plaintiffs Ilana Brin, Rachel Depante, Catherine Papamanousakis and Brittany

Perkins have separately alleged entitlement to damages resulting from Defendants' alleged

violations of Title VII of the Civil Rights of 1964 in Charges of Discrimination filed with the

Equal Employment Opportunity Commission.

        D.      Defendants expressly deny any wrongdoing whatsoever, including, but not

limited to, any conduct with respect to any aspect of Plaintiffs' employment, attendant

employment benefits and any violation of any federal, state or local statute, ordinance or law

which pertains to employment and/or attendant employment benefits.

        E.      On March 31, 2016, Defendant Brooklyn Events filed a voluntary petition for

relief under chapter 11 of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the

"**Bankruptcy Code**") with the United States Bankruptcy Court for the Eastern District of New

York (the "**Bankruptcy Court**"), Case No. 16-41371 (CEC) (the "**Bankruptcy Case**").

        F.      On May 19, 2016, the Bankruptcy Court entered an Order authorizing Brooklyn

Events to retain and employ TKD as its counsel in the Bankruptcy Case.

        G.      On October 4, 2016, the Bankruptcy Court entered an Order converting the

Bankruptcy Case from a case under chapter 11 to a case under Chapter 7 of the Bankruptcy

Code.

        H.      The Trustee is the duly appointed, qualified, permanent Chapter 7 trustee for the

Bankruptcy Case.

        I.      It is the desire of the Parties to fully, finally, and forever settle, compromise, and

discharge all disputes and claims which exist between them.  After arm's-length negotiations, the

Parties reached an amicable and final resolution of any claims that Plaintiffs may have against

Defendants, as well as any claims that Defendants may have against Plaintiffs, whether brought

in the Lawsuit, the Bankruptcy Case, or otherwise, in order to avoid costly and protracted

litigation by compromising these matters on the terms and conditions set forth below.

## <u>TERMS AND CONDITIONS</u>

1.      **<u>Recitals</u>**.  The above recitals are incorporated by this reference and made a part of

this Settlement Agreement.

2.      **<u>TKD Fees</u>**.  As soon as practicable after this Settlement Agreement is signed by

all Parties, TKD shall apply to the Bankruptcy Court for a final allowance and payment of legal

fees in the Bankruptcy Case in an amount not less than $90,000.00.  Upon entry by the

Bankruptcy Court of an order allowing and authorizing payment of fees to TKD (the **"TKD Fee**

**Order"**), TKD hereby waives and relinquishes to the Brooklyn Events estate payment of such

allowed fees in the amount of $90,000.00 (the "**TKD Fees**") for purposes of effectuating this

Settlement Agreement.  By way of example, if the Bankruptcy Court awards TKD fees in

amount so that TKD shall be entitled to an additional $120,000 on top of fees TKD has already

received by way of retainer or the monthly fee order, TKD will allow $90,000 of the $120,000 to

remain in the Brooklyn Events bankruptcy estate to effectuate this settlement and TKD would be

entitled to receive an additional $30,000 so long as the estate has sufficient funds to pay chapter

11 administrative expenses.  Conversely if the Bankruptcy Court declines to award TKD at least

an additional $90,000 on top of the fees already received by way of retainer and the monthly fee

order, this Settlement Agreement is null and void unless the parties agree otherwise in writing.

3.      **<u>Effective Date</u>**.  This Settlement Agreement is subject to approval by the District

Court and the Bankruptcy Court, and will be effective on the date that is 30 days after the last to occur of (a) entry of the TKD Fee Order; (b) entry of an Order of the District Court approving this Settlement Agreement ; (c) entry of an Order of the Bankruptcy Court approving this Settlement Agreement; and (d) Orders (a), (b) and (c) above have become final and non-appealable (the "**Effective Date**").

    4.    **Settlement Payment**. TKD and Schiffer will provide funds to pay Plaintiffs and their attorneys Wigdor LLP, in the aggregate, the amount of $110,000.00 in settlement of any and all claims against Defendants (the "**Settlement Payment**"), payable $90,000.00 from the TKD Fees, and $20,000.00 from Schiffer, as detailed below. The Parties acknowledge and agree that the Settlement Payment constitutes good and sufficient consideration for settlement of any and all claims Plaintiffs have against Defendants. The Settlement Payment will be made as follows:

    (a)    Within 45 days after the Effective Date, the Trustee will deliver to Wigdor LLP checks made payable to each individual Plaintiff in the net amounts listed in the Distribution Schedule attached as **Exhibit "A"**, and make the tax withholding payments listed in the Distribution Schedule. The Trustee will cause a Form W-2 to be issued to each Plaintiff for the amounts specified in the Distribution Schedule. These payments are made to compensate Plaintiffs for all alleged damages resulting from alleged entitlement to, *inter alia*, reimbursement of work-related expenses, reimbursement of attorneys' fees and costs, reimbursement of deductions from wages, statutory damages under the NYLL, damages for alleged violations of the common law, damages resulting from emotional distress and/or damages resulting from physical injury.

(b)     Within 45 days after the Effective Date, (a) the Trustee will deliver to Wigdor

LLP a check made payable to Wigdor LLP in the amount of $21,257.24, and (b)

Schiffer will deliver to Wigdor LLP a check made payable to Wigdor LLP in the

amount of $20,000.00, in payment and satisfaction of attorneys' fees and costs

incurred by Plaintiffs in the Lawsuit.  The Trustee and Schiffer will each issue a

Form 1099 to Wigdor LLP for the respective payments made under this Paragraph

4(b).

(c)      As soon as practicable after this Settlement Agreement is signed by all Parties,

and not less than 14 days before the payments of the amounts listed in Paragraphs

4(a) and (b) above are last due, Wigdor LLP and Plaintiffs will provide the

Trustee and Schiffer with their respective Form W-9s and any other necessary tax

information.

(d)     The payment obligations listed in Paragraphs 4(a) and (b) above cease upon

delivery of such payments to Wigdor LLP, _provided_, _however_, to the extent any

such payment is unsuccessful (_e.g._, if a check bounces for insufficient funds), the

obligation to make that payment will not be discharged.

5.     **Termination**.  This Settlement Agreement shall terminate upon the following

events (each, a "**Termination Event**"):

(a)     Lack of Court Approval.  As soon as practicable after this Settlement Agreement

is signed by all Parties, (i) the Trustee shall file a motion seeking Bankruptcy

Court approval of this Settlement Agreement (the " **Bankruptcy Court**

**Motion**"), and (ii) Wigdor LLP shall file a motion seeking District Court approval

of this Settlement Agreement (the " **District Court Motion**").  The failure or

refusal of the Bankruptcy Court and the District Court, through no fault of the

Parties, to enter orders approving this Settlement Agreement within ninety (90)

days after the last Motion is filed, or such other time period as agreed by the

Parties, shall constitute a Termination Event; and

(b)  <u>Revocation by Any Plaintiff</u>.  Revocation of this Settlement Agreement by any

Plaintiff under Paragraph 13(f) below shall constitute a Termination Event.

(c)  <u>The Bankruptcy Court's Refusal to Award TKD an Additional $90,000</u>.  The

Bankruptcy Court's refusal to award TKD sufficient fees so that TKD is entitled

to an additional $90,000 above and beyond all fees previously received by TKD,

shall constitute a Termination Event.

Upon the occurrence of a Termination Event, the Parties shall revert to their respective positions

as if this Settlement Agreement had not existed or been executed, and nothing contained in this

Settlement Agreement, the Bankruptcy Court Motion, the District Court Motion, or the

arguments of counsel and the statements of the Parties in support of Bankruptcy Court and

District Court approval of this Settlement Agreement shall be deemed admissible for any

purpose or used by any Party to the prejudice of any other Party in any subsequent litigation.

6.  **Indemnification**.  Each individual Plaintiff agrees to indemnify Releasees (as

defined in Paragraph 7(a), below) should Releasees face any adverse tax consequences or

liability as a result of their payment of the Settlement Payment to that individual Plaintiff or any

audit as a result of and related to Releasees' payment of the Settlement Payment to that

individual Plaintiff, with the exception of any liability arising from the fault or negligence of

Releasees.  Nothing in this Paragraph 6 shall be interpreted to require an individual Plaintiff to

indemnify Releasees for any adverse tax consequences or liability as a result of its payment of the Settlement Payment to any other individual Plaintiff or any audit as a result of and related to Releasees' payment of the Settlement Payment to any other individual Plaintiff.  Plaintiffs acknowledge that neither the Trustee, TKD, nor any of the Defendants have made any representation to them about the tax consequence of any payment made pursuant to this Settlement Agreement.

7.    **Plaintiffs' Release of Releasees**.  In exchange for the promises and payments and other consideration made by the Trustee, Defendants and TKD to Plaintiffs under this Settlement Agreement, the Parties agree as follows:

(a)    Plaintiffs hereby warrant, represent and certify that, other than the Lawsuit, no Plaintiff has any pending complaint, lawsuit, action, cause of action in law or equity, administrative charge, claim, controversy, demand, grievance and/or proceeding whatsoever against Defendants, their affiliates, divisions, subsidiaries, parents, any merged entity or merged entities, and/or its or their present and former officers, directors, employees (including, but not limited to, the Individual Defendants), agents, shareholders and/or successors, assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and/or Defendants' insurers (referred to in this Settlement Agreement as **"Releasees"**) in any forum, including, but not limited to, any federal, state or local court, administrative agency, the New York City Commission on Human Rights, the New York State Division of Human Rights, the United States Department of Labor, the New York State Department of Labor, the Equal Employment Opportunity Commission, and the National Labor Relations Board and, to the

extent that any administrative charge has been or is filed by or on behalf of any

Plaintiff, he/she agrees not to seek or in any way obtain or accept any monetary

award, recovery or settlement therefrom;

(b)  Upon receipt and clearance of the Settlement Payment, each Plaintiff hereby

releases, waives and agrees not to institute voluntarily or to be represented in,

submit or file, or permit to be submitted or filed on his/her behalf or anyone else's

behalf, any complaints, lawsuits, actions, causes of action, controversies,

demands, grievances and/or proceedings whatsoever, whether in law or equity,

with any administrative agency or court or any other forum, under any federal,

state or local laws or regulations including, but not limited to, claims arising

under the Americans With Disabilities Act, the National Labor Relations Act, the

Fair Labor Standards Act, the Equal Pay Act, the Employee Retirement Income

Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* as amended ("**ERISA**"),

including, but not limited to, breach of fiduciary duty and equitable claims

brought under § 1132(a)(3), the Worker Adjustment and Retraining Notification

Act, as amended, Title VII of the Civil Rights Act of 1964, the Vocational

Rehabilitation Act of 1973, the Age Discrimination in Employment Act of 1967,

as amended ("**ADEA**"), the Civil Rights Acts of 1866, 1871 and 1991, including

Section 1981 of the Civil Rights Act, the Sarbanes-Oxley Act, the, the New York

State Human Rights Law, the New York Executive Law, the New York City

Human Rights Law, the New York City Administrative Code, New York Labor

Law, the New York Whistleblower's Law, the New York AIDS Testing

Confidentiality Act, the New York Equal Pay Law, the New York Employee's

Protection from Discrimination for Engagement in Legal Activities Law, the New

York Law on Equal Rights, the New York Civil Rights Law, the New York

Adoptive Parents' Child Care Leave Law, the New York Minimum Wage Act, the

New York Wage Payment Law and/or any other federal, state or local human

rights, civil rights, whistle-blower, wage-hour, pension or labor law, rule, statute,

regulation, constitution or ordinance and/or public policy, contract or tort law, or

any claim of retaliation under such laws, or any claim of breach of any contract

(whether express, oral, written or implied from any source), or any claim of

intentional or negligent infliction of emotional distress, tortious interference with

contractual relations, wrongful or abusive or constructive discharge, defamation,

prima facie tort, fraud, negligence, loss of consortium, malpractice, breach of duty

of care, breach of fiduciary duty, or any action similar thereto against any of the

Releasees, including any claim for attorneys' fees, expenses or costs based upon

any conduct from the beginning of the world up to and including the date of this

Settlement Agreement, and shall not, from any source or proceeding whatsoever,

seek, or in any way obtain or accept any award, recovery, settlement or relief

therefrom;

(c)   Upon receipt and clearance of the Settlement Payment, Plaintiffs shall seek and

obtain dismissal with prejudice of the Lawsuit and any complaint, lawsuit, action,

cause of action, administrative charge, claim, controversy, demand, grievance or

proceeding (unless such proceeding is a class action in which case Plaintiffs agree

to "opt out" of the class and not participate in the class action) in the event that,

for any reason, any complaint, lawsuit, action, cause of action, administrative

charge, claim, controversy, demand, grievance or proceeding covered by
Paragraphs 7(a), or 7(b) is pending or is instituted on his/her behalf;

(d)   Upon receipt and clearance of the Settlement Payment, Plaintiffs release, remise
and discharge the Trustee and his duly retained professionals, TKD, and the
Brooklyn Events estate from any and all claims of any kind, character or nature
whatsoever, in law or equity, known or unknown, fixed or contingent, filed or
unfiled, that the Plaintiffs had, have, may have, or claim to have against the
Trustee, his duly retained professionals, TKD, and/or the Brooklyn Events estate,
including, without limitation, any and all filed Proofs of Claim in the Bankruptcy
Case, specifically, and without limitation, Claim 27 of Ari Fraser; Claim 28 of
Brittany Perkins; Claim 29 of Christina Ingram; Claim 30 of Darrin Morda; Claim
31 of Erika Mugglin; Claim 32 of George Faya; Claim 33 of Ilana Brin; Claim 34
of James Barnes; Claim 35 of Luis Cardozo; Claim 36 of Leslie Cuc; Claim 37 of
Miles Ewell; Claim 38 of Oliver Correa; Claim 39 of Rachel Depante; Claim 41
of Rebecca-Emma Kaplan; Claim 42 of Rosa Milazzo; Claim 43 of Ryan Pilger;
Claim 44 of Sarah Pribis; Claim 45 of Steven Suchowieski; Claim 47 of Thomas
Beaulieu; Claim 49 of Vanessa Lowe; and Claim 50 of Catherine
Papamanousakis; and

(e)   The releases contained in Paragraphs 7(a)-(d) above do not affect or limit: (i)
Plaintiffs' right to bring and recover damages for any claims that may arise after
the date Plaintiffs sign the Settlement Agreement; (ii) Plaintiffs' rights to enforce
the Releasees' obligations herein; (iii) [intentionally omitted]; (iv) Plaintiffs' right
to bring and recover damages for any claims that, under controlling law, may not

be released by this Settlement Agreement; or (v) [intentionally omitted].

8.      **Release of Plaintiffs**.  In exchange for the promises and release made by
Plaintiffs in this Settlement Agreement, the Parties agree as follows:

(a)      Verboten, Individual Defendants, and TKD hereby warrant, represent and
certify that none of them has any pending complaint, lawsuit, action, cause
of action in law or equity, administrative charge, claim, controversy,
demand, grievance and/or proceeding whatsoever against any Plaintiff in
any forum, including, but not limited to, any federal, state or local court,
administrative agency, the New York City Commission on Human Rights,
the New York State Division of Human Rights, the United States
Department of Labor, the New York State Department of Labor, the Equal
Employment Opportunity Commission, and the National Labor Relations
Board and, to the extent that any administrative charge has been or is filed
by or on behalf of any Plaintiff, he/she agrees not to seek or in any way
obtain or accept any monetary award, recovery or settlement therefrom;

(b)      Upon Plaintiffs' receipt and clearance of the Settlement Payment,
Verboten, Individual Defendants, and TKD hereby release, waive and
agree not to institute voluntarily or to be represented in, submit or file, or
permit to be submitted or filed on his/her behalf or anyone else's behalf
any complaints, lawsuits, actions, causes of action, controversies,
demands, grievances and/or proceedings whatsoever, whether in law or
equity, with any administrative agency or court or any other forum, under
any federal, state or local laws or regulations including, but not limited to,

{11396505:4}                                      11

claims arising under the Americans With Disabilities Act, the National

Labor Relations Act, the Fair Labor Standards Act, the Equal Pay Act,

ERISA, including, but not limited to, breach of fiduciary duty and

equitable claims brought under § 1132(a)(3), the Worker Adjustment and

Retraining Notification Act, as amended, Title VII of the Civil Rights Act

of 1964, the Vocational Rehabilitation Act of 1973, the ADEA, the Civil

Rights Acts of 1866, 1871 and 1991, including Section 1981 of the Civil

Rights Act, the Sarbanes-Oxley Act, the New York State Human Rights

Law, the New York Executive Law, the New York City Human Rights

Law, the New York City Administrative Code, New York Labor Law, the

New York Whistleblower's Law, the New York AIDS Testing

Confidentiality Act, the New York Equal Pay Law, the New York

Employee's Protection from Discrimination for Engagement in Legal

Activities Law, the New York Law on Equal Rights, the New York Civil

Rights Law, the New York Adoptive Parents' Child Care Leave Law, the

New York Minimum Wage Act, the New York Wage Payment Law

and/or any other federal, state or local human rights, civil rights, whistle-

blower, wage-hour, pension or labor law, rule, statute, regulation,

constitution or ordinance and/or public policy, contract or tort law, or any

claim of retaliation under such laws, or any claim of breach of any

contract (whether express, oral, written or implied from any source), or

any claim of intentional or negligent infliction of emotional distress,

tortious interference with contractual relations, wrongful or abusive or

constructive discharge, defamation, prima facie tort, fraud, negligence,

loss of consortium, malpractice, breach of duty of care, breach of fiduciary

duty, or any action similar thereto against any of the Plaintiffs, including

any claim for attorneys' fees, expenses or costs based upon any conduct

from the beginning of the world up to and including the date of this

Settlement Agreement and General Release and shall not, from any source

or proceeding whatsoever, seek, or in any way obtain or accept any award,

recovery, settlement or relief therefrom;

(c)  Upon Plaintiffs' receipt and clearance of the Settlement Payment,

Verboten, Individual Defendants, and TKD agree to immediately seek and

obtain dismissal with prejudice of any complaint, lawsuit, action, cause of

action, administrative charge, claim, controversy, demand, grievance or

proceeding (unless such proceeding is a class action in which case

Verboten, Individual Defendants, and TKD agree to "opt out" of the class

and not participate in the class action) in the event that, for any reason, any

complaint, lawsuit, action, cause of action, administrative charge, claim,

controversy, demand, grievance or proceeding covered by Paragraphs

8(a), or 8(b) is pending or is instituted on any behalf of Verboten,

Individual Defendants, and TKD;

(d)  Upon Plaintiffs' receipt and clearance of the Settlement Payment, the

Trustee, qua trustee, and on behalf of the chapter 7 estate of Brooklyn

Events, releases, remises and discharges the Plaintiffs from any and all

claims of any kind, character or nature whatsoever, in law or equity,

known or unknown, fixed or contingent, filed or unfiled, that the Trustee or Brooklyn Events had, have, may have, or claim to have against the Plaintiffs in connection with, arising under, or related to the Lawsuit or the Bankruptcy Case; and

(e)     The releases contained in these Paragraphs 8(a)-(d) do not affect or limit: (i) the rights of the Trustee, Brooklyn Events, Verboten, Individual Defendants, and TKD to bring and recover damages for any claims that may arise after the date Plaintiffs sign this Settlement Agreement; (ii) the rights of the Trustee, Brooklyn Events, Verboten, Individual Defendants, and TKD to enforce Plaintiffs' obligations herein; or (iii) the rights of the Trustee, Brooklyn Events, Verboten, Individual Defendants, and TKD to bring and recover damages for any claims that, under controlling law, may not be released by this Settlement Agreement.

9.     **Mutual Non-Disparagement**.

(a)     Plaintiffs each agree that they will not collectively or individually (i) make any statements (orally, in writing, or through any other means) including, but not limited to, any public statements, or statements to the media; (ii) publish or cause to be published any books, articles, journals, videos, scripts or treatments; or (iii) publish, post, or cause to be published or posted any blog entry, tweet, or other internet or social media posting, which impugns or disparages any Defendant.

(b)     The Individual Defendants each agree that they will not collectively or individually (i) make any statements (orally, in writing, or through any

other means) including, but not limited to, any public statements, or statements to the media; (ii) publish or cause to be published any books, articles, journals, videos, scripts or treatments; or (iii) publish, post, or cause to be published or posted any blog entry, tweet, or other internet or social media posting, which impugns or disparages any Plaintiff.

(c)    Notwithstanding ¶¶ 9(a) and (b), Defendants shall be entitled to issue a press release or other similar public statement including via social media indicating the Lawsuit filed by the Plaintiffs has been resolved and dismissed.

10.    **Severability**. The Parties agree that if any of the provisions, terms, clauses, waivers and releases of claims and rights contained in this Settlement Agreement are declared illegal, unenforceable or ineffective in a forum of competent jurisdiction, such provisions, terms, clauses, waivers and releases of claims or rights shall be modified, if possible, in order to achieve, to the extent possible, the intentions of the Parties, and, if necessary, such provisions, terms, clauses, waivers and releases of claims and rights shall be deemed severable, such that all other provisions, terms, clauses, waivers and releases of claims and rights contained in this Settlement Agreement shall remain valid and binding upon the Parties. Plaintiffs further agree to use their best efforts to effectuate a valid release for any provisions, terms, clauses, waivers and releases or claims or rights deemed to be unenforceable for any reason.

11.    **Modification**. The Parties agree that this Settlement Agreement may not be altered, amended, modified, superseded, canceled or terminated except by an express written agreement duly executed by all Parties.

12.    **Integration**. This Settlement Agreement sets forth the entire agreement between

the Parties, and fully supersedes or integrates any and all prior agreements or understandings
between them pertaining to the subject matter thereof.

13.   **Knowing and Voluntary Agreement**.  Plaintiffs agree and affirm that:

(a)   They have carefully read and fully understand all of the provisions of this
Settlement Agreement;

(b)   They were advised and hereby are advised to consider carefully the terms
of this Settlement Agreement and consult with an attorney prior to
executing this Agreement, and have considered the terms of this
Settlement Agreement and consulted with an attorney prior to executing it;

(c)   They have been given twenty-one (21) days to consider their rights and
obligations under this Settlement Agreement and to consult with an
attorney before executing it;

(d)   This Settlement Agreement is legally binding, and by signing it, Plaintiffs
understand they are giving up certain rights, including, but not limited to,
any and all claims they may have against Releasees under the ADEA;

(e)   They have signed this Settlement Agreement freely and voluntarily, without
duress, coercion or undue influence and with full and free understanding of
its terms;

(f)   They have a full seven (7) calendar days following their execution of this
Settlement Agreement to revoke it by notifying in writing Defendants,
TKD, and the Trustee of Plaintiff's desire to revoke, and have been and
hereby are advised that this Agreement shall not become effective or
enforceable until the seven (7) day revocation period has expired;

(g)     They have each reviewed the Settlement Agreement and acknowledge and

agree that the payments provided for in Exhibit "A" to this Settlement

Agreement are accurate. Each Plaintiff further represents that this

Settlement Agreement constitutes informed consent concerning the

settlement of the Lawsuit, release of claims, and consent to the amounts

paid to each other Plaintiff as well as the participation of each Plaintiff in

the Settlement Agreement; and

(h)     They are authorized to execute the Settlement Agreement, that each has

full power and authority to enter into this Settlement Agreement and that

this Settlement Agreement is duly executed and delivered, and constitutes

a valid, binding agreement in accordance with its terms.

14.    **Costs and Attorney Fees**. Except as otherwise specifically provided for in this

Settlement Agreement, each Party shall pay his/her/its own attorney's fees and costs, if any,

arising out of the Lawsuit, the Bankruptcy Case and this Settlement Agreement, including any

applicable fees or expenses charged by the District Court or the Bankruptcy Court.

15.    **Notices**. Any notice required or provided for under this Settlement Agreement

shall be in writing and shall be sent as follows:

If to Plaintiffs or Wigdor, LLP:            Wigdor, LLP
                                            85 Fifth Avenue
                                            New York, New York 10003
                                            Attn. Michael J. Willemin, Esq.
                                            Email: mwillemin@wigdorlaw.com

If to TKD, Verboten
or Individual Defendants:                   Tarter Krinsky & Drogin LLP
                                            1350 Broadway
                                            New York, New York 10018
                                            Attn: Scott Markowitz, Esq.
                                            Email: smarkowitz@tarterkrinsky.com

If to Trustee or Brooklyn Events:          Alan Nisselson, Esq.
                                           Windels Marx Lane & Mittendorf, LLP
                                           156 West 56th Street
                                           New York, New York 10019
                                           Email: anisselson@windelsmarx.com

16.     **Counterpart Execution Permissible**.  This Settlement Agreement may be executed in counterparts, each of which when so executed shall be deemed an original and all such counterparts together shall constitute but one and the same instrument.  Photographic and facsimiled copies of such signed counterparts may be used in lieu of the originals for any purpose.

17.     **Interpretation of Agreement**.  The Parties agree that any person or entity interpreting or construing this Agreement shall not apply a presumption that any of its provisions should be more strictly construed against the party who prepared the Settlement Agreement, as all Parties have fully participated in the preparation of all provisions of this Agreement.  To signify their agreement to the terms of this Settlement Agreement, the Parties have executed this Settlement Agreement as of the date set forth above.

18.     **Governing Law**.  This Settlement Agreement shall be governed by the laws of the State of New York, and to the extent applicable, the Bankruptcy Code, without regard to the State of New York's rules governing the conflict of laws.

**IN WITNESS WHEREOF**, the Parties have signed this Settlement Agreement as of the date set forth above.

*/s/ James Barnes*
James Barnes

*/s/ Tom Beaulieu*
Tom Beaulieu

*/s/ Ilana Brin*
Ilana Brin

*/s/ Luis Cardozo*
Luis Cardozo

{11396505:4}                               18

/s/ Oliver Correa
Oliver Correa

/s/ Leslie Cuc
Leslie Cuc


/s/ Rachel Depante
Rachel Depante

/s/ Miles Ewell
Miles Ewell


/s/ Ari Fraser
Ari Fraser

/s/ George Faya
George Faya


/s/ Christina Ingram
Christina Ingram

/s/ Rebecca-Emma Kaplan
Rebecca-Emma Kaplan


/s/ Vanessa Lowe
Vanessa Lowe

/s/ Rosa Milazzo
Rosa Milazzo


/s/ Darrin Morda
Darrin Morda

/s/ Erika Mugglin
Erika Mugglin


/s/ Catherine Papamanousakis
Catherine Papamanousakis

/s/ Brittany Perkins
Brittany Perkins


/s/ Ryan Pilger
Ryan Pilger

/s/ Sarah Pribis
Sarah Pribis


/s/ Steven Suchowieski
Steven Suchowieski


/s/ Jen Schiffer
Jen Schiffer

/s/ Jen Schiffer
Verboten Corporation
By: Jen Schiffer, President


/s/ John Perez
John Perez

/s/ Dylan Schwartz
Dylan Schwartz

Wigdor, LLP

Tarter Krinsky & Drogin, LLP

/s/ David E. Gottlieb
By: David E. Gottlieb, Esq.
    As to Paragraphs 4 and 5 Only

/s/ Scott Markowitz
By: Scott Markowitz

/s/ Alan Nisselson
Alan Nisselson, Trustee for the
Chapter 7 estate of Brooklyn Events, LLC

s/Frederic Block

| BROOKLYN EVENTS LLC DISTRIBUTION SCHEDULE PER AGREEMENT | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| NAME | AMOUNT | GROSS | FUI | SUI | SUI | FICA MEDICARE | GROSS | FICA MEDICARE | FEDERAL 10 percent | NYS 4 percent | NYC 2.25 percent | NET PAYROLL |
| James Barnes | 3,535.61 | 3,147.66 | 18.89 | 125.91 | 2.36 | 240.80 | 3,147.66 | 240.80 | 314.77 | 125.91 | 70.82 | 2,395.37 |
| Tom Beaulieu | 2,791.27 | 2,484.99 | 14.91 | 99.40 | 1.86 | 190.10 | 2,484.99 | 190.10 | 248.50 | 99.40 | 55.91 | 1,891.08 |
| Ilana Brin | 3,721.70 | 3,313.33 | 19.88 | 132.53 | 2.48 | 253.47 | 3,313.33 | 253.47 | 331.33 | 132.53 | 74.55 | 2,521.45 |
| Luis Cardozo | 4,847.14 | 4,315.28 | 25.89 | 172.61 | 3.24 | 330.12 | 4,315.28 | 330.12 | 431.53 | 172.61 | 97.09 | 3,283.93 |
| Oliver Correa | 5,210.38 | 4,638.66 | 27.83 | 185.55 | 3.48 | 354.86 | 4,638.66 | 354.86 | 463.87 | 185.55 | 104.37 | 3,530.02 |
| Leslie Cuc | 1,910.72 | 1,701.06 | 10.21 | 68.04 | 1.28 | 130.13 | 1,701.06 | 130.13 | 170.11 | 68.04 | 38.27 | 1,294.51 |
| Rachel Depante | 3,721.70 | 3,313.33 | 19.88 | 132.53 | 2.48 | 253.47 | 3,313.33 | 253.47 | 331.33 | 132.53 | 74.55 | 2,521.45 |
| Miles Ewell | 2,307.45 | 2,054.26 | 12.33 | 82.17 | 1.54 | 157.15 | 2,054.26 | 157.15 | 205.43 | 82.17 | 46.22 | 1,563.29 |
| George Faya | 2,233.02 | 1,988.00 | 11.93 | 79.52 | 1.49 | 152.08 | 1,988.00 | 152.08 | 198.80 | 79.52 | 44.73 | 1,512.87 |
| Ari Fraser | 5,582.55 | 4,970.00 | 29.82 | 198.80 | 3.73 | 380.20 | 4,970.00 | 380.20 | 497.00 | 198.80 | 111.82 | 3,782.17 |
| Christina Ingram | 1,116.51 | 994.00 | 5.96 | 39.76 | 0.75 | 76.04 | 994.00 | 76.04 | 99.40 | 39.76 | 22.36 | 756.43 |
| Rebecca-Emma Kaplan | 2,791.27 | 2,484.99 | 14.91 | 99.40 | 1.86 | 190.10 | 2,484.99 | 190.10 | 248.50 | 99.40 | 55.91 | 1,891.08 |
| Vanessa Lowe | 1,674.76 | 1,490.99 | 8.95 | 59.64 | 1.12 | 114.06 | 1,490.99 | 114.06 | 149.10 | 59.64 | 33.55 | 1,134.65 |
| Rosa Milazzo | 3,721.70 | 3,313.33 | 19.88 | 132.53 | 2.48 | 253.47 | 3,313.33 | 253.47 | 331.33 | 132.53 | | 2,596.00 |
| Darrin Morda | 1,860.85 | 1,656.67 | 9.94 | 66.27 | 1.24 | 126.73 | 1,656.67 | 126.73 | 165.67 | 66.27 | 37.27 | 1,260.72 |
| Erika Mugglin | 2,363.28 | 2,103.97 | 12.62 | 84.16 | 1.58 | 160.95 | 2,103.97 | 160.95 | 210.40 | 84.16 | 47.34 | 1,601.12 |
| Catherine Papamanousakis | 3,721.70 | 3,313.33 | 19.88 | 132.53 | 2.48 | 253.47 | 3,313.33 | 253.47 | 331.33 | 132.53 | 74.55 | 2,521.45 |
| Brittany Perkins | 5,582.55 | 4,970.00 | 29.82 | 198.80 | 3.73 | 380.20 | 4,970.00 | 380.20 | 497.00 | 198.80 | | 3,893.99 |
| Ryan Pilger | 1,860.85 | 1,656.67 | 9.94 | 66.27 | 1.24 | 126.73 | 1,656.67 | 126.73 | 165.67 | 66.27 | 37.27 | 1,260.72 |
| Sarah Pribis | 2,233.02 | 1,988.00 | 11.93 | 79.52 | 1.49 | 152.08 | 1,988.00 | 152.08 | 198.80 | 79.52 | 44.73 | 1,512.87 |
| Steven Suchowieski | 5,954.72 | 5,301.33 | 31.81 | 212.05 | 3.98 | 405.55 | 5,301.33 | 405.55 | 530.13 | 212.05 | | 4,153.59 |
| TOTAL | 68,742.75 | 61,199.87 | 367.20 | 2,447.99 | 45.90 | 4,681.79 | 61,199.87 | 4,681.79 | 6,119.99 | 2,447.99 | 1,071.34 | 46,878.75 |

{11486590:1}

# Exhibit 2

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

In re

BROOKLYN EVENTS, LLC,
d/b/a VERBOTEN,

Chapter 7

Case No. 1-16-41371-cec

Debtor.

## ORDER APPROVING SETTLEMENT AGREEMENT RESOLVING CLAIMS OF THE DEBTOR'S FORMER EMPLOYEES

Upon the Motion dated November 28, 2017 (ECF Doc. No. 134) (the "**Motion**") of Alan

Nisselson ("**Trustee**"), trustee for the chapter 7 estate of Brooklyn Events, LLC d/b/a Verboten

("**Debtor**"), by his attorneys, Windels Marx Lane & Mittendorf, LLP, seeking entry of an Order

approving a Settlement Agreement (the "**Agreement**") [1], a copy of which is attached to the

Motion as Exhibit "1", and to this Order as **Exhibit "A"**; and notice of the Motion having been

served upon creditors and parties in interest in this case as reflected in the Affidavit of Service

filed with the Court on December 15, 2017 (ECF Doc. No. 140); and no further notice of the

Motion being warranted or necessary; and no objections or other responses to the Motion having

been filed; and a hearing to consider the Motion having been held on January 11, 2018 (the

"**Hearing**"); and upon the record of the Hearing; and after due deliberation having been had;

**IT IS HEREBY ORDERED** that:

1.      The Agreement, a copy of which is attached as Exhibit "A", is hereby approved.

2.      The Trustee is authorized to take such actions, execute any documents,

instruments or agreements, and expend such funds as are reasonable and necessary to implement

the Agreement and perform his obligations thereunder and to effectuate the terms of the

Agreement under this Order.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the
Agreement.

3.     To implement Paragraph 7(d) of the Agreement, the Trustee will file with the Court and serve upon the Parties to the Agreement a notice that the Settlement Payment was made to the Plaintiffs and has cleared, and that upon the filing and service of such notice, Claim 27 of Ari Fraser; Claim 28 of Brittany Perkins; Claim 29 of Christina Ingram; Claim 30 of Darrin Morda; Claim 31 of Erika Mugglin; Claim 32 of George Faya; Claim 33 of Ilana Brin; Claim 34 of James Barnes; Claim 35 of Luis Cardozo; Claim 36 of Leslie Cuc; Claim 37 of Miles Ewell; Claim 38 of Oliver Correa; Claim 39 of Rachel Depante; Claim 41 of Rebecca-Emma Kaplan; Claim 42 of Rosa Milazzo; Claim 43 of Ryan Pilger; Claim 44 of Sarah Pribis; Claim 45 of Steven Suchowieski; Claim 47 of Thomas Beaulieu; Claim 49 of Vanessa Lowe; and Claim 50 of Catherine Papamanousakis will be deemed satisfied in full.

4.     The Court shall retain jurisdiction over any and all disputes, controversies, claims, or other matters arising under or otherwise relating to the Motion.



**Dated: Brooklyn, New York**
**January 19, 2018**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**

{11486831:1}

2